**Earl P. HUDDLESTON,
Appellee-Plaintiff,**

v.

**P & L COAL COMPANY and Bituminous Casualty Corporation, Appellants-Defendants.**

Supreme Court of Tennessee.

Oct. 1, 1979.

Don Moses, Jellico, David B. Rogers, LaFollette, for appellee-plaintiff.

Frank Q. Vettori, Knoxville, for appellants-defendants; O'Neil, Parker & Williamson, Knoxville, of counsel.

## OPINION

HARBISON, Justice.

In this workmen's compensation case the employer and its insurer appeal from an award to the employee for total permanent disability benefits as the result of coal worker's pneumoconiosis. After careful consideration of the record and of the assignments of error, we affirm the decision of the trial judge.

The employee, Earl P. Huddleston, worked in underground coal mining for nineteen years prior to 1964. For three years thereafter he engaged in logging. During the years from 1967 until 1974 he worked in the coal mining industry in surface or strip mines.

Appellee had suffered from lung disease and shortness of breath for many years, and had made application for Federal Black Lung benefits in 1972. This application was sustained on March 29, 1974, and it was determined that he was entitled to monthly benefits from and after May 1972 on the basis of total permanent disability from coal worker's pneumoconiosis.

The employee testified that although he knew he was totally disabled in 1973, and had been so advised by a thoracic surgeon, he nevertheless felt compelled to seek employment with appellant P & L Coal Company in December 1973 for financial reasons. He testified that he was obligated to make mortgage payments on his home, and that he either had to go to work or lose his home by foreclosure. He testified that he was a skilled mechanic and had been employed in that capacity by other mining companies. He was apparently not subjected to any sort of physical examination or other pre-employment inquiry. He commenced work near the end of December 1973 and worked continuously in or near strip-mining operations conducted by appellant until September 7, 1974, a period of approximately nine months.

In his work as a mechanic, appellee performed maintenance and repairs on heavy mining machinery and equipment. Most of the time he worked some distance from the actual strip-mine pit, but at times he was required to go into the pit to work upon disabled equipment and machinery.

There is little question but that appellee was exposed to dust during these months of employment. Although the job was considerably cleaner and the working atmosphere much less dusty than that which he had encountered in underground coal mining, nevertheless he was exposed both to road dust and to coal dust in his working environment. He worked out-of-doors, and he testified that sometimes his working conditions were free of dust. On other occasions, however, he would be in or near vehicles which would create ground dust, and some of the vehicles were trucks loaded with coal. He also worked on and maintained equipment, such as bulldozers, drills and lifts.

Upon examination by the trial judge, the following testimony was elicited:

"THE COURT: Now what exposure to particles in the air, dust of any kind, did you have on the job?

"THE WITNESS: Well, when you're working on equipment they'll be something pass, you'll pick up dust regardless.

"THE COURT: Well, would it be any more so than it would if you were sitting on a porch and an automobile passed on a gravel road, is that what you're talking about, that kind of dust?

"THE WITNESS: Oh, yeah, it'd be worse than that.

"THE COURT: Well, what would pass, be specific?

"THE WITNESS: Well, lots of times a dozer would be down and a high lift would pass or one of these back dumps would pass backwards and forwards to the fuel tanks and stuff and they stir up dust.

"THE COURT: Well, your place where you worked on machinery wasn't located in the area between the pit and the waste pits and things of that sort, you were off

out to the side and you say what dust you got was from things going to the fuel depot and back?

"THE WITNESS: They would get it where they could out of the dust. Sometimes, very often, I would have to work on it in the dust, but not regular."

Appellee testified that his shortness of breath and lung condition grew worse during the months while he worked for appellant, but that he "worked 'till I got disabled completely and quit." He testified that he worked some fifty to fifty-eight hours per week continuously during the period of his employment by appellant.

■ There is no question from medical testimony filed in this case that appellee is totally permanently disabled as a result of coal worker's pneumoconiosis. He must have been almost so disabled, at least from a medical standpoint, at the time when he began to work for appellant. At that time his claim for federal benefits was pending. It was later allowed, but after he went to work for appellant, he became ineligible, and his Federal Black Lung benefits were terminated as a result of that employment. At the time of the hearing of the present case, appellate proceedings seeking review of his termination were still pending.

Dr. Joseph Fox, a physician practicing in a coal mining region of the state, testified that he had examined appellee on February 14, 1972. According to the history given him, appellee had been advised to quit underground coal mining operations in 1964. Dr. Fox testified that he found appellee to be suffering from coal worker's pneumoconiosis and advised him not to return to coal mining work. He said that appellee suffered from a significant disability in February 1972, and that when he re-examined the patient during 1976 his condition had deteriorated. At the time of his deposition on October 7, 1976, Dr. Fox was of the opinion that appellee was totally and permanently disabled. He testified that pneumoconiosis is a progressive disease, but that working in a dusty environment would aggravate the condition. He testified that if appellee worked with "no exposure to dust", then his

working environment should not aggravate his condition. He testified: however, "I can't imagine a strip pit without any dust."

Dr. Fox further testified:

"Q. Would it have made any difference in the man's condition by 1976 as to whether or not from 1972 to 1976 he had been exposed to dust?

"A. Yes. And that would have been against medical advice, because I told him to avoid it, when I saw him in 1972. I don't know whether he worked further in the mines or not, but he was told not to.

"Q. You took no further history from him in 1976?

"A. No, I did not.

"Q. Is this condition that he had expected to last for more than a year?

"A. Yes, it's a chronic disease. It will be with him the rest of his life."

Dr. Sheldon E. Domm, stipulated to be a highly qualified thoracic surgeon, examined appellee on November 14, 1975 and found that he was suffering from coal worker's pneumoconiosis to the extent that he was "disabled for the performance of significant labor inside or outside of coal mines."

From the foregoing, we are of the opinion that there was substantial and material evidence to justify the conclusion of the trial court that appellee was exposed to dust of various kinds in his employment with appellant, and that his coal worker's pneumoconiosis culminated in total permanent disability during and as a result of that employment.

■ Appellants, however, insist that the last employer of appellee, P & L Coal Company, is not liable to appellee because he had not been employed by that company for as much as one year, so as to make appellant "a responsible operator" under the federal regulations promulgated by the Secretary of Health, Education and Welfare, 20 C.F.R. §§ 725.303 and .311. Appellants insist that the liability of the employer for coal worker's pneumoconiosis is governed by federal, rather than state, law.

We are unable to agree with appellants' contention. T.C.A. § 50–1102 provides:

"In considering whether an employee has the occupational disease of coal worker's pneumoconiosis and is totally disabled or dies therefrom all the presumptions, criteria and standards contained in or promulgated by reason of the Federal Coal Mine Health and Safety Act of 1969, Public Law 91–173, specified as the basis for determining *eligibility of applicants* for benefits because of said disease or its effects shall be used and be applicable under this law; and where in a proceeding under this law for benefits it is determined the employee or his dependents would be entitled to benefits under the Federal Coal Mine Health and Safety Act of 1969, the said employee or his dependents by reason of said determination shall be considered totally disabled from coal worker's pneumoconiosis and its effects, under this law the same as if said employee, or his dependents, establishes the right to recover benefits based upon a total disability from coal worker's pneumoconiosis, or death by reason thereof under the laws of this state." (Emphasis added).

In other portions of the Tennessee Workmen's Compensation Act dealing with occupational diseases, specific references are made and separate treatment given to coal worker's pneumoconiosis. At no point, however, do we find that the General Assembly adopted all of the provisions of the 1969 federal legislation above referred to, or that it in any way changed or intended to change the provisions of T.C.A. § 50–1106, which deals with successive employers. That statute, as it existed at all times pertinent to this case, provides:

"When an employee has an occupational disease that is covered by the Workmen's Compensation Law, the employer in whose employment he was last injuriously exposed to the hazards of the disease, and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier."

Although previous cases in the state have not expressly discussed the contention of appellants, it is clear that in determining liability of successive employers, the courts have applied the Tennessee statute, rather than federal criteria, in coal worker's pneumoconiosis cases. Thus in *Hill v. Four-Leaf Coal Co.*, 529 S.W.2d 225 (Tenn.1975) the employee had worked for some nine years for Four-Leaf Coal Company when he became totally disabled from pneumoconiosis. After he left the employ of that company, however, he worked on four different days for another strip mining company, and it was the insistence of Four-Leaf Coal Company in that case that this subsequent employment exonerated it and rendered the last employer liable. The trial court determined, however, that there was no "injurious" exposure to the hazards of the disease during the brief and sporadic occasions of work by the employee after he left the employment of Four-Leaf Coal. It was accordingly determined that Four-Leaf Coal, rather than the subsequent employer, was liable under T.C.A. § 50–1106.

In the more recent case of *Bituminous Casualty Corp. v. Lewis*, 538 S.W.2d 604, 606 (Tenn.1976), the Court said:

"The chancellor further found that appellee was last injuriously exposed to the hazards of the disease when he was working for Kopper Glo. These findings made appellant liable for payment to appellee of workmen's compensation benefits (T.C.A. 50–1106), provided appellee prosecuted his claim for benefits properly."

As pointed out by the trial court, the proof in this case was somewhat meager and a close question was presented as to whether the employee was injuriously exposed during the months of his employment with appellant. We are of the opinion that the evidence was sufficient to justify a trier of fact in reaching the conclusions which were drawn by the trial judge.[1]

Accordingly the assignments of error are overruled and the judgment of the trial court is affirmed at the cost of appellants.

1. Cf. *Oman Constr. Co. v. Bray*, 583 S.W.2d 303 (Tenn.1979).

The cause will be remanded to that court for such further orders as may be necessary or appropriate.

BROCK, C. J., COOPER and HENRY, JJ., and McLEMORE, Special Justice, concur.